**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| AMY ANN PITTS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Civil Action No. 2:06cv1129-MEF |
| UNITED STATES OF AMERICA, | )    (CR No.: 2:04cr-25-F) |
| | ) |
| Respondent. | ) |

<u>**UNITED STATES'S RESPONSE TO § 2255 MOTION**</u>

COMES NOW the United States of America ("the Government") by and through its

attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United

States Attorney, and in compliance with this Court's October 24, 2007 order for the Government

to address Petitioner Amy Ann Pitts's allegations of ineffective assistance of counsel, responds

as follows:

## I.  PROCEDURAL HISTORY AND RELEVANT FACTS

Petitioner Amy Ann Pitts ("Pitts") was originally charged by the filing of a complaint on

January 29, 1994.  *See* Doc. 1.[1]  She was subsequently indicted on February 27, 2004 and

charged with  possession of a controlled substance with the intent to distribute it, a violation of

21 U.S.C. § 841(a)(1).  *See* Doc. 12.  Specifically, the indictment charged that, on or about

January 28, 2004, within Montgomery County, within the Middle District of Alabama, Pitts

knowingly and intentionally possessed 50 grams or more of methamphetamine, a Schedule II

---

[1]The references to "Doc." are to the docketed entries from Pitts's criminal case, criminal
case number 2:04-cr-00025-MEF-SRW-ALL.

controlled substance, with the intent to distribute it. *Id*. As a result of the charge in the indictment, Pitts was facing a term of imprisonment of not less than 10 years nor more than life and a fine of $2 million, or both, and a supervised release period of not less than five years. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

Pitts was represented at all relevant times during the criminal proceedings in the district court by Barry E. Teague. *See* Docs. 6, 9. Represented by Mr. Teague, Pitts entered into plea negotiations with the Government, and, ultimately, entered into a very favorable plea agreement with the Government. *See* Doc. 79*,* Government's Exhibit A ("GX" A), attached to the "Government's Response to Show Cause Order Regarding Government's Motion To Dismiss Petitioner's 28 USC 2255 Motion." The plea agreement was a Rule 11(c)(1)(C),[2] or "binding" plea agreement. *See* GX A at 2. In exchange for her plea of guilty to the charge in the indictment, the Government agreed to recommend that Pitts receive a 36-month sentence and to file a motion for a downward departure under the provisions of Rule 35 of the Federal Rules of Criminal Procedure, if Pitts provided substantial assistance to the Government in other cases. *Id*. The Government did, however, reserve the right to inform the district court and the probation officer "of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background." *Id*.

In exchange for the recommended 36-month sentence (a sentence 84 months less than the

---

[2]Rule 11(c)(1)(C) provides: "If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will ... agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."

otherwise mandatory minimum sentence of 120 months), Pitts agreed to plead guilty to the

charge in the indictment. *Id*. at 2-3. She also agreed to provide substantial assistance to law

enforcement agents as defined in the agreement, which included the following requirement:

> (6)    You will cooperate fully and truthfully with the government in this
> investigation and in any other federal criminal investigation. You will
> respond, completely, fully and truthfully to all inquiries addressed to you
> by representatives of the government, and you will testify fully and
> truthfully at any and all reasonable times and places before grand
> juries and against any and all defendants at the trial of any and all cases
> arising from this investigation or any other such investigation.

*Id*. at 3-4. And she agreed to waive her rights to appeal and collateral attack under 28 U.S.C. §

2255, except her right to appeal on the grounds of ineffective assistance of counsel; prosecutorial

misconduct; an upward departure from the applicable sentencing guidelines range or a sentence

in excess of the statutory maximum; and a sentence that violated the law in any way not

involving the sentencing guidelines. *Id*. at 4-5.

In addition to these provisions, the plea agreement contained the following brief factual

basis for the plea:

> . . . The defendant admits the allegations charged in the Indictment and
> understands that the nature of the charge to which the plea is offered involves
> proof as to the charge in the Indictment. Specifically, the defendant admits the
> following to be true and correct: On January 28, 2004, officers conducted a
> search warrant at the defendant's home in Montgomery, Alabama. During the
> search, officers found approximately 4 ounces of methamphetamine which the
> defendant intended to sell. Prior to January 28, 2004, the defendant admits to
> selling approximately 380 grams of ... methamphetamine in the Middle District of
> Alabama and elsewhere.

*Id*. at 4. It also contained a list of Pitts's "understandings and acknowledgments", including the

following relevant acknowledgment:

> j. The defendant further understands that if the defendant has failed or

should fail in any way to fulfill completely the defendant's obligations under this agreement, including, but not limited to, committing any new state or federal criminal offense while awaiting sentencing, then the Government will be released from its commitment to honor all of its obligations to the defendant without the defendant being able to withdraw his [sic.] guilty plea. The determination of whether the defendant has breached this Plea Agreement by failing to fulfill the defendant's obligations herein, will be at the sole discretion of the Government.

*Id*. at 8. Finally, in the agreement, Pitts acknowledged that she understood that the probation office would prepare a presentence report for the district court's consideration in sentencing her and that, in doing so, it would be considering her "conduct related to the offense to which the plea is offered, as well as the defendant's criminal history." *Id*. at 9.

A change of plea hearing was held on April 11, 2005. *See* GX B, attached to the "Government's Response to Show Cause Order Regarding Government's Motion To Dismiss Petitioner's 28 USC 2255 Motion." After the terms of the plea agreement were outlined for the Court, Pitts was placed under oath and questioned by the Court to determine her competence to enter the plea and the voluntariness thereof. *See* GX B at 3-11. During questioning by the Court, Pitts was asked if she had read and discussed her plea agreement with her attorney before she signed it, and she said that she had. *Id*. at 4. She also affirmed that the plea agreement represented *any and all* understandings she had with the Government. *Id*. at 4-5 (emphasis added). The Court explained to Pitts that, if the Court chose not to follow the plea agreement, she would have the opportunity to withdraw the plea, but that if she chose not to withdraw the plea, the Court might impose a more severe sentence without being bound by the terms of the plea agreement, and Pitts indicated that she understood. *Id*. at 5-6.

Also at the change of plea hearing, the Court explained to Pitts the minimum and maximum penalties she was facing: no less than ten years' imprisonment and no more than life

imprisonment, a fine of up to $2 million, or both a fine and imprisonment, a term of supervised release of not less than five years, and an assessment fee of $100. *Id*. at 6. The Court explained in detail the rights Pitts was relinquishing by entering a guilty plea, *id*. at 6-9, and then asked her if she understood "that by entering a plea of guilty if that plea is accepted by the District Judge there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial as I have just described them", *id*. at 9. Pitts indicated that she understood. *Id*.

The Court explained the charge and the elements of that charge to Pitts, *id*. at 9, and elicited a factual basis for the plea from Pitts, *id*. at 10-11. It then found that Pitts was fully competent and capable of entering an informed plea, and indicated that it would be recommending to the district court that the plea be accepted. *Id*. at 11; *see also* Doc. 82. At the Government's urging, the Court permitted Pitts to remain out of jail on bond pending sentencing. *Id*. at 12-13. The district court accepted Pitts's guilty plea on April 28, 2005. *See* Doc. 84.

On July 29, 2007, after the guilty plea was accepted, the Government, as it had agreed to do, filed Government's Motion To Award 3 Points To Defendant For Acceptance of Responsibility Pursuant to § 3E1.1 United States Sentencing Guidelines, *see* Doc. 93, GX D, attached to this response, and Government's Motion For Downward Departure Pursuant To § 5K1.1 United States Sentencing Guidelines, *see* Doc. 92, GX E, attached to this response. In its § 5K1.1 motion, the Government asserted that Pitts had cooperated with the Government and had abided to that point with the terms of her plea agreement. *See* GX E at 1. The Government further represented that the assistance Pitts had provided was substantial. *Id*. Finally, the Government stated that it was "satisfied that the defendant is entitled to be considered for a

reduction of sentence under § 5K1.1 U.S.S.G.,[3] and moves this Court to downwardly depart and impose a sentence of 36 months imprisonment as required by the terms of the plea agreement." *Id*.

After these motions were filed, Pitts violated the terms of her plea agreement and the Government filed a Notice Of Breach Of Plea Agreement with the Court. *See* Doc. 97, GX F, attached to this response. In that August 31, 2005 notice, the Government represented Pitts had breached the plea agreement as follows:

> On August 30, 2005, the United States learned that the Defendant Amy Pitts submitted a urine sample which tested positive for methamphetamine. Additionally, the defendant possessed methamphetamine which was discovered during a search of her purse at the United States Probation Office. The use and possession of methamphetamine by the defendant constitutes violations of state and federal law, and therefore relieves the United States of its obligation [under] the terms and conditions of the plea agreement. See paragraph 4j at page 8 of Plea Agreement. Under the terms of the plea agreement, the defendant may not withdraw her guilty plea and is subject to being sentenced as if she had not entered a plea agreement with the United States. Id.

*Id*. at 1.

Pitts filed a response to the Government's notice on September 28, 2005. *See* Doc. 101, GX G, attached to this response. In that response, Pitts represented that she had been rendering assistance to the agents involved in her case against other targets that had resulted in the filing of cases pending in this Court and in other courts; that her assistance to the Government was dangerous to her safety and had resulted in her exposure as an informant by Nicole Broadfoot through Broadfoot's publishing Pitts's agreement with the Government on the street; and that the

---

[3]"U.S.S.G." refers to the United States Sentencing Guidelines, specifically, in this case, it refers to the 2004 edition of the United States Sentencing Guidelines Manual, which was the version of the Guidelines Manual used to calculate Pitts's sentence in this case.

Government's notice of breach of the plea agreement had overlooked the many meritorious

things that Pitts had done for the Government. *Id*. at 1. Pitts argued that, as a result of the many

things she had done for the Government up to that point, she should be entitled to all, or at least

most, of the benefits of her agreement with the Government. *Id*. Pitts then referenced the

Government's two previously filed motions in which it asked for the three-level reduction in her

offense level based on her cooperation under U.S.S.G. § 3E1.1 and the substantial assistance

motion under U.S.S.G. § 5K1.1, and argued:

> 6.    That the filing of these two motions is evidence that Amy Pitts had performed pursuant to the agreement in such manner that she was entitled to consideration enough to get her the benefits of the agreement. In fact, the defendant at the time of the filing of the **plea agreement** according to the prosecutors had already earned the 36 months sentence, and that if her cooperation continued she would be entitled to an even greater reduction than a sentence of 36 months. Amy Pitts continued to render valuable assistance to the government at great risk to her safety. She should not be deprived of her rights to the benefits of the plea agreement and the government's motions for downward departure.

> 6 [sic.]. Assuming *arguendo* that Amy Pitts should be punished for having her urine screen show positive, the court is asked to consider that if she had been on supervised release from prison with such violation, the most she would be punished under the guidelines for a violation of such supervision would be 24 months. If the court deems that the defendant should not get the complete benefit called for under the plea agreement and the government's motions, the defense submits that no more than an extra 24 months should be added to her sentence.

*Id*. at 2. Pitts did not argue in her response that she had not committed the additional offenses

described by the Government in its notice.

An initial presentence report, dated July 1, 2005, was prepared before Pitts breached her

plea agreement. *See* GX H, attached to this response. After the plea agreement was breached, a

revised presentence report was prepared; that report is dated September 22, 2005, and is GX H,

attached to this response.  Pitts stated written objections to that presentence report in a letter to

the probation office dated October 3, 2005.  *See* GX I, attached to this response.  Pitts objected to

paragraphs 10, 11, and 12 of the revised presentence report on the grounds that the information

contained in those paragraphs was obtained in violation of the proffer agreement letter provided

to Pitts by the Government when she agreed to talk to agents for the Government.  That

agreement stated in relevant part:

> 6.    Any information given during the proffer will not be used against
> you <u>in calculating</u> any federal sentence you may be facing in the Middle District
> of Alabama, in accordance with Section 1B1.8 of the United States Sentencing
> Guidelines, unless it is determined that you have intentionally provided false or
> misleading information.

*See* GX I at 1 (emphasis contained in GX I).  Pitts argued that, despite the Government's

agreement in the proffer letter, Pitts's statements to agents had been used in calculating her

sentence, as was reflected in paragraphs 10 through 12 of the presentence report.  *Id*. at 1-2.

Moreover, she argued, the agreement contained in the proffer letter was distinct from the

agreements contained in the plea agreement of April 11, 2005, and that the proffer letter, unlike

the plea agreement was governed by Rule 11, not U.S.S.G. § 1B1.8(b)(4).[4]

--------

[4]U.S.S.G. § 1B1.8, entitled "Use of Certain Information" provides:

(a)    Where a defendant agrees to cooperate with the government by providing information
concerning unlawful activities of others, and as part of that cooperation agreement the
government agrees that self-incriminating information provided pursuant to the
agreement will not be used against the defendant, then such information shall not be used
in determining the applicable guideline range, except to the extent provided in the
agreement.

(b)    The provision of subsection (a) shall not be applied to restrict the use of information:

(1)    known to the government prior to entering into the cooperation agreement;

8

Pitts also objected to paragraphs 14 and 15 of her revised presentence report in which the probation officer found that Pitts should be assessed an additional two points to her offense level under U.S.S.G. § 3C1.1 for obstruction of justice. *See* GX H, ¶ 14. Pitts argued that her case was not governed by the decision in *United States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999), the case relied on by the probation officer in paragraphs 14 and 15 of the presentence report to find that Pitts should be assessed a two-point enhancement for obstructing justice, and that because of the extent of her cooperation in this case, *Witherell* should not be extended to apply to her case. *See* GX I at 3-4.

Finally, in her objections, Pitts argued that the Court should considered that she suffered from an addiction to methamphetamine and that she had not yet had the opportunity to be exposed to any drug treatment program. *See* GX I at 4. She argued that, in light of that fact and the scope of her cooperation, she should still receive the benefits of most, if not all, of her plea agreement. *Id.*

Pitts's sentencing hearing was held before U.S. District Judge Mark E. Fuller on January 31, 2006. *See* GX C, attached to the Government's Response to Show Cause Order Regarding Government's Motion To Dismiss Petitioner's 28 USC 2255 Motion." Before addressing Pitts's

---

(2)      concerning the existence of prior convictions and sentences in determining §4A1.1 (Criminal History Category) and §4B1.1 (Career Offender);

(3)      in a prosecution for perjury or giving a false statement;

(4)      in the event there is a breach of the cooperation agreement by the defendant; or

(5)      in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under §5K1.1 (Substantial Assistance to Authorities).

9

objections to the presentence report, Judge Fuller determined that there was a binding plea agreement in this case under Rule 11(c)(1)(C), and that Pitts did not disagree that she had involved herself in conduct that arose to the commission of a new state or federal criminal offense while awaiting sentence, in violation of paragraph 4J on page 8 of her plea agreement. *See* GX C at 4-5. The Government outlined the manner in which Pitts violated the plea agreement, as follows:

> ... She did, in fact, violate the terms of her plea agreement.  Just by way of background for the Court because some things that occur in the course of a case, of course, occur outside the presence of the Court.  I had a conversation with Ms. Pitts after I had been assigned to prosecute this case.  The original plea agreement had been worked out between Mr. Teague and Mr. Brown in my office that she would receive a sentence of 36 months.  During the course of our meeting with her – my meeting with her, she wanted to try to get some further reduction in her time based upon things that she felt she could do or would do.  I explained to her that I thought that the 36 months sentence that she got originally was too lenient, but that the agreement had been made and that our office was obligated to honor our previous commitment to her, and that if she did do things to assist us that would be taken into account in further reductions if she did things that justify that.

> Subsequent to that conversation Ms. Pitts was found to be in possession of a device to try to beat the drug test.  And the way that came about was that we received information from another individual who told us that she was, in fact, continuing to use and abuse drugs, and that she was using a device called a Whizzinator to beat the drug test, and that if we were to call her in unexpectedly they would find a Whizzinator on her person and that they would find narcotics either in her car or in her purse.  And that is subsequently what happened.  She was called in for an unannounced drug test, they discovered the device, they discovered the methamphetamine in her purse in her car.  So I gave notice of the breach to Mr. Teague and we are here today, Your Honor.

*See* GX C at 6-7.  After this representation by the Government, Judge Fuller found that, based on Rule 11(c)(1)(C) and the plea agreement in this case, Pitts's plea was knowingly, voluntarily, and intelligently entered, and negotiated with the Government, and that Pitts's ensuing and intervening conduct had caused the Government to no longer be bound by the terms of the

10

agreement. *See* GX C at 7-8. He then proceeded to hear Pitts's objections to the presentence report. *See* GX C at 8.

As to the objections to the presentence report contained in his October 3, 2005 letter to the probation officer, *see* GX C at 5; GX I, counsel for Pitts first argued that, although he had termed his argument as an objection to the presentence report, what he was really doing was asking the Court to take a special view of the facts, to consider all of the facts of Pitts's cooperation and not simply look to her breach of the plea agreement, in applying 18 U.S.C. § 3553 and determining a reasonable sentence in this case. *See* GX C at 9. When Judge Fuller asked Pitts's counsel if he wished to withdraw his objection and just make his argument a part of his argument in support of the amount of time that the Court should consider for Pitts for her substantial assistance, counsel for Pitts replied, "Yes, Your Honor." *Id*. Counsel for Pitts explained that, although he had termed his argument an objection in his October 3rd letter, he did not think it was fairly called an objection. *Id*. at 10  In light of counsel's representation, Judge Fuller did not consider the argument as an objection, and did not rule on it as such. *Id*.

As to Pitts's second objection concerning the assessment of two additional points to Pitts's offense level on the grounds she obstructed justice in committing her additional drug offenses, counsel for Pitts withdrew the objection. *Id*. at 10-11. Counsel for Pitts explained that he was withdrawing his second objection because, upon his further reading of *United States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999), he believed there was no question that Pitts's behavior would be considered obstruction of justice under that case and that the Court would have to assess the additional two points for obstruction of justice. *Id*. at 10.

There being no objections to the presentence report, Judge Fuller adopted the factual

statements contained in the presentence report, with the specific finding that Pitts's offense level was 40, her criminal history category was I, and the resulting sentencing guidelines range was from 292 months to 365 months' imprisonment. *Id*. at 11, 17-18. He then heard argument and took evidence on the § 5K1.1 motion for downward departure based on Pitts's substantial assistance. *Id*. at 13-74. After hearing all the evidence, including Pitts's own testimony, *id*. at 48-69, Judge Fuller granted the Government's motion for a downward departure based on Pitts's substantial assistance, reducing her offense level to a level 32. *Id*. at 74. With an offense level of 32 and a criminal history category of I, Judge Fuller determined that Pitts's sentencing guidelines imprisonment range was from 121 months to 151 months, with a fine range of from $17,500 to $2 million. *Id*. Counsel for Pitts made additional argument on Judge Fuller's § 5K1.1 departure, arguing that Pitts's substantial assistance should result in a lower sentencing range, *id*. at 75-78, but Judge Fuller rejected those arguments and maintained his finding of a 121 to 151-month sentencing range, *id*. at 79.

After hearing additional mitigating evidence from Pitts, *id*. at 79-85, Judge Fuller proceeded to sentence Pitts. Pitts was sentenced to 121 months in prison, to be followed by supervised release for a term of four years, subject to standard and special conditions. *Id*. at 85-86. Imposition of a fine was waived, due to Pitts's inability to pay, and she was ordered to pay a $100 assessment fee. *Id*. Because there was no identifiable victim, no restitution was ordered. *Id*. at 85. Finally, Judge Fuller determined that Pitts's sentence was reasonable in light of the factors listed in 18 U.S.C. § 3553(e). *Id*. at 86-87. Counsel for Pitts renewed her previous objections, stating that "our objections are those that would have been previously stated on the record." *Id*. at 87.

Judgment was entered in Pitts's case on February 3, 2006. *See* Doc. 108. Pitts filed

certified that she put her § 2255 motion in the mail on December 19, 2006.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

As far as the Government can discern, Pitts raises two ineffective assistance of counsel

claims in her § 2255 motion and in her response to the Government's motion to dismiss the §

2255 motion:

1.    She received ineffective assistance of counsel at her sentencing when counsel, without consulting with her and explaining what he was doing, withdrew the objections previously made to the presentence report.

2.    She received ineffective assistance of counsel when counsel failed to argue that she did not breach the plea agreement even though she committed another offense, because she was not convicted of that other offense before her cooperation was completed and she was sentenced.

As explained below, Pitts is not entitled to relief on these two ineffective assistance of counsel

claims.

## III.  RESPONSE TO CLAIMS FOR RELIEF

### A.    <u>Pitts Has Met The One-Year Statute of Limitations Under 28 U.S.C. § 2255.</u>

Pitts has filed her motion raising her ineffective assistance of counsel claim in a timely

manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time to

seek relief under the rule. Section 2255 states that a motion be filed within one year from

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution and laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the

> Supreme Court, if that right has been newly recognized by the Supreme
> Court and made retroactively applicable to cases on collateral review; or
>
> (4)  the date on which the facts supporting the claim or claims presented
> could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  The relevant date for purposes of Pitts's § 2255 motion is paragraph (1),

the date on which the judgment of conviction became final.

The final judgment in Pitts's criminal case was entered on February 3, 2006.  *See* Doc.

108.  She did not appeal her conviction or sentence to the United States Court of Appeals for the

Eleventh Circuit, because she waived such right as a part of her binding plea agreement.  Her

sentence became final when the time for filing an appeal to the Eleventh Circuit expired.

Although not specifically addressing the application of the statute of limitations to the 10-day

notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction

becomes final for someone who appeals to an appellate court when the time for seeking certiorari

review in the Supreme Court expires.  *See Kaufman v. United States*, 282 F.3d 1336, 1337-39

(11th Cir. 2002).  Likewise, a judgment of conviction becomes final for someone who does not

appeal when the time for seeking that appeal expires.  *See*, *e.g.*, *Ramirez v. United States*, No. 05-

10010, 2005 WL 1706142, at *1 (11th Cir. July 22, 2005) (unpub.).  Pitts had 10 days from the

February 3, 2006 entry of judgment by this Court to seek review by the Eleventh Circuit, *see* Fed.

R. App. P. 4(b)(1)(A)(i); her conviction and sentence became final, therefore, on February 13,

2006.  Under § 2255, Pitts then had until February 13, 2007 – one year after February 13, 2006 –

to file her motion.  She filed the instant motion on December 19, 2007, well-within one year

from the time the judgment in her case became final.  It is, therefore, timely under the limitation

period in § 2255 ¶ 6(1).

**B.**    **Pitts's Ineffective Assistance Of Counsel Claims Are Not Barred From This Court's Review Because, In Her Plea Agreement, She Reserved The Right To Raise Such Claims In The Appropriate Venue And Such Claims Are Properly Raised In § 2255 Proceedings.**

In *Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for [Section] 2255 relief unless he can establish  cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default....

*Id*. at 1055-56 (internal citations omitted).

The only issues that this Court has directed the Government to respond to are the two issues of ineffective assistance of counsel raised by Pitts.  "Except in the rare instance when the record is sufficiently developed, [the Eleventh Circuit] will not address claims for ineffective assistance on direct appeal." *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005); *see also United States v. Garcia-Jaimes*, 484 F.3d 1311, 1319 (11th Cir. 2007); *United States v. Nix*, 438 F.3d 1284, 1288 (11th Cir. 2006).  "An ineffective assistance of counsel claim is properly raised in a collateral attack . . . under 28 U.S.C. § 2255." *United States v. Butler*, 41 F.3d 1435, 1437 (11th Cir. 1995); *accord*, *United States v. Frazier*, 89 F.3d 1501, 1503 n.1 (11th Cir. 1996).  Because Pitts effectively waived her right to direct appeal, this is not one of those rare instances where the ineffective assistance of counsel claim could have been raised on direct

appeal, but was not.  Therefore, Pitts's ineffective assistance of counsel claims are not barred

from review in this § 2255 proceeding.

**C.**      **Pitts's Counsel Was Not Constitutionally Ineffective Simply Because He Did Not Discuss His Withdrawal Of The Objections To The Presentence Report With Pitts Before He Withdrew Them Nor In Failing to Argue That Pitts Did Not Violate The Plea Agreement.**

This Court has directed a response from the Government on Pitts's ineffective assistance

of counsel claims:  (1) whether Pitts's counsel rendered ineffective assistance when he failed to

consult Pitts and discuss with her his decision to withdraw the previously filed objections to the

presentence report at sentencing before doing so and (2) whether her counsel was ineffective in

failing to argue that she did not violated the plea agreement because, although she did commit

another offense before she completed her cooperation and was sentenced, she was not *convicted*

of another offense.  Because Pitts has failed to establish both deficient performance and

prejudice, this Court should reject her ineffective assistance of counsel claims without an

evidentiary hearing.

**1.**      **The *Strickland* Test For Ineffective Assistance of Counsel Claims**

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both

that her counsel's performance was deficient and that that deficient performance prejudiced her

case.  *Strickland v. Washington,* 466 U.S. 668, 694 (1984); *see also*, *Bell v. Cone,* 535 U.S. 685,

697-98 (2002) (reaffirming the *Strickland v. Washington* standard for reviewing ineffective

assistance of counsel claims); *Brown v. United States*, No. 07-10219, 2007 WL 2900580, at *3

(11th Cir. Oct. 4, 2007) (applying two-part test of *Strickland v. Washington*).  More specifically,

Pitts must show that (1) identified acts or omissions of counsel fell below an objective standard

of reasonableness, and (2) that her counsel's alleged errors or omissions resulted in prejudice to

her to such an extent that, without counsel's alleged errors or omissions, there is a reasonable

probability that the outcome of her sentencing would have been different. *Yordan v. Dugger,*

909 F.2d 474, 477 (11th Cir. 1990).

    In analyzing counsel's performance under the performance prong of *Strickland*, this Court

must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477.

"Counsel is 'strongly presumed' to have rendered adequate assistance and to have exercised

reasonable professional judgment," and the "proper measure of attorney performance is

'reasonableness under prevailing professional norms.' " *Brown v. United States*, 2007 WL

2900580, at *3 (internal citations omitted). A "[d]efendant must prove deficient performance by

a preponderance of competent evidence. *Gallo-Chamorro v. United States*, 233 F.3d 1298,

1303-04 (11th Cir. 2000)(footnotes omitted).

    The Eleventh Circuit has described a defendant's burden with regard to the deficient

performance prong of an ineffective assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a
> petitioner seeking to rebut the presumption of adequate performance must bear a
> heavy burden:
>
> > The test has nothing to do with what the best lawyers would have done.
> > Nor is the test even what most good lawyers would have done. We ask
> > only whether some reasonable lawyer at the trial could have acted, in the
> > circumstances, as defense counsel acted at trial. ... We are not interested
> > in grading lawyers' performances; we are interested in whether the
> > adversarial process at trial, in fact, worked adequately.
>
> > ... Thus, in order to show that counsel's performance was unreasonable, the
> > petitioner must establish that *no competent counsel would have taken the
> > action that his counsel did take....*

17

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

To succeed on an ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Brown v. United States*, 2007 WL 2900580, at *3. The Eleventh Circuit has described a defendant's burden in demonstrating that her counsel's deficient performance prejudiced her case as "high," noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *Brown v. United States*, 2007 WL 2900580, at *3; *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). Moreover, "[a] determination of the prejudice prong of the *Strickland* analysis is necessarily dependent on a review of the merits of the underlying claim." *Brown v. United States*, 2007 WL 2900580, at *3. " 'Counsel cannot be labeled ineffective for failing to raise issues which have no merit.' " *Id.*, *quoting Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

Finally, as the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *accord, Robinson v. Moore*, 300 F.3d at 1343.

## 2.    Counsel's Withdrawal of the Objections to the Presentence Report

First, Pitts argues that her counsel was ineffective at sentencing for withdrawing the objections to the presentence report raised in the October 3, 2005, letter to the probation officer without first consulting with her about that decision and without explaining his reasoning for doing so to her. Pitts has failed to meet her burden of proof on this issue because she has not established that her counsel's performance was deficient or that she was prejudiced by counsel's

withdrawal of the objections.  She has not established that but for counsel's failure to consult

with her about his decision to withdraw the objections, the outcome of her sentencing would

have been different.

      In the written objections to the presentence report filed by Pitts's counsel, Pitts objected

to paragraphs 10, 11, and 12 of the revised presentence report on the grounds that the information

contained in those paragraphs was obtained in violation of the proffer agreement letter provided

to Pitts by the Government when she agreed to talk to agents for the Government.  *See* GX I at 1.

In the proffer agreement, the Government represented to Pitts that any information she gave

during the proffer would not be used against her in calculating her federal sentence, in

accordance with Section 1B1.8 of the United States Sentencing Guidelines, unless it was

determined that she had intentionally provided false or misleading information.  *Id*.  In her

objections, Pitts argued that despite the Government's agreement in the proffer letter, Pitts's

statements to agents had been used in calculating her sentence, as was reflected in paragraphs 10

through 12 of the presentence report.  *Id*. at 1-2.  Moreover, it was argued in the objections that

the agreement contained in the proffer letter was distinct from the agreement contained in the

plea agreement of April 11, 2005, and that the proffer letter, unlike the plea agreement, was

governed by Rule 11, not U.S.S.G. § 1B1.8(b)(4).

      In the written objections, Pitts also objected to paragraphs 14 and 15 of her revised

presentence report in which the probation officer found that Pitts should be assessed an

additional two points to her offense level under U.S.S.G. § 3C1.1 for obstruction of justice.  *See*

GX H, ¶ 14, 15.  Pitts's counsel argued that her case was not governed by the decision in *United*

*States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999), the case relied on by the probation officer in

19

paragraphs 14 and 15 of the presentence report to find that Pitts should be assessed a two-point enhancement for obstructing justice, and that because of the extent of her cooperation in this case, *Witherell* should not be extended to apply to her case. *See* GX I at 3-4.

At the beginning of the sentencing hearing, counsel for Pitts withdrew both of these objections. As to the first objection, counsel for Pitts explained that the first "objection" was not really an objection and was in the nature of a request for the Court to take a special view of the facts in Pitts's case – to consider all of the facts of Pitts's cooperation and not simply look to her breach of the plea agreement – in applying 18 U.S.C. § 3553 and determining a reasonable sentence in this case. *See* GX C at 9. When Judge Fuller asked Pitts's counsel if he wished to withdraw his objections and just make his argument a part of his argument in support of the amount of time that the Court should consider for Pitts for her substantial assistance, counsel for Pitts replied, "Yes, Your Honor." *Id*. Counsel for Pitts explained that, although he had termed his argument an objection in his October 3, 2005 letter, he did not think it was fairly called an objection. *Id*. at 10. In light of counsel's representation, Judge Fuller did not consider the argument as an objection, and did not rule on it as such. *Id*.

As to Pitts's second objection concerning the assessment of two additional points to Pitts's offense level on the grounds she obstructed justice in committing her additional drug offenses, counsel for Pitts withdrew the objection. *Id*. at 10-11. Counsel for Pitts explained that he was withdrawing his second objection because, upon his further reading of *United States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999), he believed there was no question that Pitts's behavior would be considered obstruction of justice under that case and that the Court would have to assess the additional two points for obstruction of justice. *Id*. at 10.

As to both of the objections, Pitts's counsel provided reasonable strategic explanations for his withdrawal of the objections. First, although Pitts's proffer letter did provide that "[a]ny information given during your proffer will not be used against you in calculating any federal sentence ..., in accordance with Section 1B1.8 of the United States Sentencing Guidelines, unless it is determined that you have intentionally provided false or misleading information," as counsel for Pitts must have acknowledged after filing his objections, the provision in the proffer letter itself said it was governed by § 1B1.8, contrary to the written objection concerning whether it applied or Rule 11 applied in some way that superceded § 1B1.8. Furthermore, § 1B1.8(b) specifically provides that, even if an agreement such as the one made by the Government in the proffer letter is made, the provisions of that agreement "shall not be applied to restrict the use of information . . . in the event there is a breach of the cooperation agreement by the defendant" and/or in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1 (Substantial Assistance to Authorities). In this case, Pitts violated the cooperation agreement she entered with the Government – the plea agreement – specifically paragraph (6), which stated:

> (6)    You will cooperate fully and truthfully with the government in this investigation and in any other federal criminal investigation. You will respond, completely, fully and truthfully to all inquiries addressed to you by representatives of the government, and you will testify fully and truthfully at any and all reasonable times and places before grand juries and against any and all defendants at the trial of any and all cases arising from this investigation or any other such investigation.

*Id*. at 3-4. She also violated paragraph 4.j. of the plea agreement, which provided as follows:

> j. The defendant further understands that if the defendant has failed or should fail in any way to fulfill completely the defendant's obligations under this agreement, including, but not limited to, committing any new state or federal criminal offense

while awaiting sentencing, then the Government will be released from its
commitment to honor all of its obligations to the defendant without the defendant
being able to withdraw his [sic.] guilty plea.  The determination of whether the
defendant has breached this Plea Agreement by failing to fulfill the defendant's
obligations herein, will be at the sole discretion of the Government.

*Id*. at 8.  When Pitts continued to buy and use methamphetamine while she was awaiting

sentencing, but hid that information from law enforcement *see* GX C at 27-28, 38-40, 53-56, 58-

62; when she continued to sell it to others during that same time period, *see* GX C at 40-41, 42-

43, 53-54, 58-59, 71; when she tried to mislead probation officers by using a Whizzonator to

avoid the detection of methamphetamine in her system when subjected to urinalysis by the

probation office, *see* GX C at 28, 45-46, 52; when she tried to warn others under investigation

about how to avoid detection, *see* GX at 30-33, 50-51, 62-64; when she failed to be completely

truthful about who was involved in buying and selling methamphetamine with her, *see* GX C at

49-50; and when she was found with methamphetamine in her purse and in her car, *see* GX C at

7, GX F at 1, Pitts violated the plea agreement.  She did so by both misleading agents of the

Government and by committing additional crimes.

Additionally, contrary to the argument of Pitts's counsel in the written objections, the

plea agreement, by its specific terms, superceded anything contained in the proffer letter.  The

plea agreement specifically stated:  "The United States reserves the right to inform the Court and

the Probation Office of all facts pertinent to the sentencing process, including all relevant

information concerning the offenses and the defendant's background."  *See* GX A at 2.  It also

provided:  "The Probation Office will consider the defendant's conduct related to the offense to

which the plea is offered, as well as the defendant's criminal history."  *See* GX A at 9.

Additionally, the plea agreement provided: "The defendant further advises the Court that the

defendant's understanding of this Plea Agreement is as set forth in this document," *see* GX A at 8, and, on the signature page, Pitts acknowledged that "the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached," *see* GX A at 11. Further, at the change of plea hearing, Pitts admitted that the plea agreement contained in its entirety any understandings that she had with the Government. *See* GX B at 4-5. Finally, the plea agreement provided that, if Pitts violated the terms of the agreement by committing any new state or federal offenses, "the Government [was] released from its commitment to honor *all* of its obligations to the defendant...." *See* GX B at 8 (emphasis added). The terms of a plea agreement may supercede prior agreements, as they did here. *See*, *e.g.*, *United States v. Amponsah*, No. 05-3641, 2007 WL 2591191, at *4 n.6 (3d Cir. Sept. 10, 2007) (unpub.); *United States v. Escobar*, No. 03-1870, 2004 WL 1987424 (6th Cir. Sept. 1, 2004) (unpub.).

In light of these facts, counsel for Pitts must have realized that his original "objections" to the presentence report as to the use of the information from the proffer were not sustainable in light of the plea agreement and Pitts's breach of that agreement. So, he reasonably argued that the information concerning her cooperation, including her own self-incriminating statements, were properly considered under § 1B1.8(b)(5). This strategic decision was reasonable in light of the facts. Further, while it might have been more advisable for counsel to have discussed his strategy with Pitts before pursuing it, it was not required, and Pitts has cited no way in which his discussion of the matter with her would have changed or affected that strategy to her benefit. Pitts has wholly failed to demonstrate that "*no competent counsel would have taken the action*

23

*that [her] counsel did take.*"  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001).[5]

Furthermore, Pitts has failed to demonstrate that she was prejudiced by counsel's failure to discuss his decision to withdraw the objection regarding the use of her statements in sentencing.  First, as noted above, Pitts has not indicated how discussing that decision with her would have affected counsel's strategy in withdrawing the objection.  Second, she has not, and cannot, demonstrate that, but for counsel's decision to withdraw the objection, the outcome of her sentencing would have been different.  As outlined above, Pitts violated the terms of her plea agreement[6] and the plea agreement superceded any other agreements Pitts had with the Government, so even if counsel had pursued his non-meritorious argument, which he was not required to do, he would not have been successful, and the outcome of Pitts's sentencing would not have been different.  And third, even if Pitts's counsel had persisted in his initial argument, the Court had sustained the objection, and the information contained in paragraphs 10, 11, and 12 had been redacted from the presentence report, Pitts's mandatory minimum sentence would still have been 120 months (one month less than the sentence that she actually received), based on her admissions in the plea agreement and at sentencing that, on January 28, 2004, she knowingly and intentionally possessed with the intent to distribute more than 50 grams of methamphetamine "ice," more specifically about 493 grams of methamphetamine "ice".  *See* GX A at 4; GX B at 10-11.  Pitts can only speculate that the district court would have sentenced her below this

---

[5]Pitts relies on *United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996), in support of her claim for relief.  *Taylor* does not support her argument, however, because the Government did not breach the plea agreement in this case as did the Government in *Taylor*; Pitts did, as explained fully above.  Moreover, because the plea agreement contained all agreements between the parties, anything stated in the proffer letter was superceded by the plea agreement.

[6]The district court, in fact, found Pitts breached her plea agreement.  *See* GX C at 4-5.

statutory minimum after granting her the downward departure for substantial assistance.  And in light of her behavior after the guilty plea and before sentencing, it is highly unlikely – certainly not highly probable – that the district court would not have sentenced her differently.  For these reasons, Pitts has not shown, nor can she, that but for her counsel's decision to withdraw the objections to those paragraphs in the presentence report, her sentence would have been different.  Therefore, she is entitled to no relief on this aspect of her ineffective assistance of counsel claim.

Pitts's counsel's decision to withdraw his objection to the obstruction of justice two-point enhancement was also a reasonable decision for him to make, because, as counsel ultimately concluded, the objection was without merit under the Eleventh Circuit's decision in *United States v. Witherell*, 186 F.3d 1343 (11th Cir. 1999).   By breaching the terms of her plea agreement, Pitts impeded the administration of justice.  *See* U.S.S.G. § 3C1.1, cmt. n. 4(c), (d), (g), (h), providing specific examples of covered conduct, all of which could apply to Pitts's case.  Further, Pitts has not demonstrated how counsel's failure to discuss his decision to withdraw his objection with her before doing so would have affected his strategic decision not to make this non-meritorious argument.  Finally, counsel cannot be found ineffective for failing to raise a non-meritorious issue.  *See Brown v. United States*, 2007 WL 2900580, at *3.  Because the argument was non-meritorious, Pitts's counsel's conduct in withdrawing the objection cannot be considered deficient nor can it be considered to have resulted in prejudice.  Because counsel was not ineffective with respect to his withdrawal of this objection, this Court should reject this aspect of Pitts's ineffective assistance of counsel claim.

### 2.     Counsel's Failure To Argue That Pitts Did Not Breach The Plea Agreement

Pitts's final claim of ineffective assistance of counsel is that her counsel was

constitutionally ineffective because he failed to argue at sentencing that Pitts did not violate the plea agreement. Pitts bases this claim of ineffective assistance of counsel on what she claims her understanding of the plea agreement was – that she had to be convicted of another crime before the plea agreement was null and void, not simply commit additional crimes. However, the plea agreement only provided that, if Pitts *committed* any new state or federal offense while awaiting sentence, the Government was released from its commitment to honor its obligations under the plea agreement and that this determination was to be made in the sole discretion of the Government. *See* GX A at 8. It did not state that Pitts had to be *convicted* of any new crimes. If Pitts's understanding of the agreement was different, it was simply wrong, and she acknowledged by signing the plea agreement that she had discussed the agreement with her attorney and understood the terms of that agreement. *See* GX A at 7, 8, 11.

Further, Pitts admitted at sentencing, and she does not dispute in her motion, that she committed additional crimes. So, she in effect has admitted that she violated the plea agreement as it was written. Because Pitts has admitted she violated her plea agreement, although she now claims her understanding of that agreement was different than it actually was, her attorney could not be found ineffective for failing to raise this non-meritorious issue. This Court should reject Pitts's claim for relief.

Pitts's claims of ineffective assistance of counsel are without merit. Therefore, her § 2255 motion should be denied.

## IV. MISCELLANEOUS

Pitts has failed to plead facts or present sufficient evidence or argument demonstrating that she is entitled to an evidentiary hearing, and her claims for relief should be denied without

such a hearing.  *See Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991); *United States v. Laetividal-Gonzalez*, 939 F. 2d 1455, 1465 (11th Cir. 1991).  Should this Court determine that Pitts has made any arguments not addressed in this response, the Government would request the opportunity to further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the arguments made as to each claim raised are asserted in the alternative.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Amy Ann Pitts has failed to demonstrate that she is entitled to any relief from this Court, and her § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 20th day of November, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **AMY ANN PITTS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:06cv1129-MEF** |
| **UNITED STATES OF AMERICA,** | ) | **(CR No.: 2:04cr-25-F)** |
| | ) | |
| **Respondent.** | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2007, I electronically filed the foregoing response

and attachments with the Clerk of the Court using the CM/ECF system and mailed, postage

prepaid, a copy of this response to the *pro se* Defendant/Movant as follows:

> Amy Ann Pitts
> Rg. #113373-002
> FPC Marianna
> Marianna, FL  32446

> Respectfully submitted,
>
> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> /s/  Sandra J. Stewart
> SANDRA J. STEWART
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, AL  36101-0197
> (334) 551-1764
> (334) 223-7135

28

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION    RECEIVED

UNITED STATES OF AMERICA    )
    )    2005 JUL 28  P 4: 37
    vs.    )    CASE NO. 2:04cr-25-F
    )    DEBRA P. HACKETT, CLK
AMY PITTS    )    UNDER SEAL STRICT COURT
    )    MIDDLE DISTRICT ALA

### GOVERNMENT'S MOTION TO AWARD 3 POINTS TO DEFENDANT FOR ACCEPTANCE OF RESPONSIBILITY PURSUANT TO § 3E1.1, UNITED STATES SENTENCING GUIDELINES

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and files the above-captioned motion, and as reasons therefore, submits the following:

1. A grand jury sitting in the Middle District of Alabama returned an indictment against Defendant and the defendant timely notified the United States she intended to enter a plea of guilty and did so in a manner which obviated the need for the United States to prepare for trial. .

2. Pursuant to United States Sentencing Guidelines § 3E1.1(b), as amended, the United States makes this formal motion for a one-level reduction in Defendant's offense level for acceptance of responsibility, such that the total reduction in offense level for Defendant's acceptance of responsibility shall be three (3) levels.

Respectfully submitted, this the 28th day of July, 2005.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

*Clark Morris*  for

TERRY F. MOORER   ASB-1176-073T
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail:terry.moorer@usdoj.gov

**GOVERNMENT
EXHIBIT**

CASE
NO. _04-cr-25_

EXHIBIT
NO. _D_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA            )
                                    )
        vs.                         )        CASE NO. 2:04cr-25-F
                                    )
AMY PITTS                           )
                                    )

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2005, I have served a copy of the foregoing, by

depositing a copy of same in the United States mail, first class, postage prepaid, and

properly addressed to Barry Teague, Esquire.

Respectfully submitted,

*Clark Morris for*

TERRY F. MOORER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: terry.moorer@usdoj.gov
ASB-1176-O73T

2

IN THE DISTRICT COURT OF THE UNITED STATES RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2005 JUL 28 P 4: 37

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

UNITED STATES OF AMERICA      )

v.                            )        CR. NO. 2:04-cr-25-F

AMY PITTS                     )        UNDER SEAL

## GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE
## PURSUANT TO § 5K1.1, UNITED STATES SENTENCING GUIDELINES

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and files the above-captioned motion, and as reasons therefore, submits the following:

1.  Defendant entered a plea of guilty under Rule 11(c)(1)(C) to an indictment charging violation of Title 21, United States Code, Section 841, pursuant to a plea agreement.

2.  Defendant agreed to cooperate with the Government in the instant cause and in subsequent investigations as necessary, and to waive his rights to appeal or collaterally attack the guilty plea or sentence.

3.  The United States submits the defendant has cooperated with the United States and has abided by the terms of her plea agreement.  The assistance provided by the defendant should be considered substantial.

4.  The Government is satisfied that the defendant is entitled to be considered for a reduction of sentence under § 5K1.1 U.S.S.G., and moves this Court to downwardly depart and impose a sentence of 36 months imprisonment as required by the terms of the plea agreement.



**GOVERNMENT EXHIBIT**

CASE NO. 04-cr-25

EXHIBIT NO. E

Respectfully submitted, this the 28th day of July, 2005.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

*Clark Morris for.*

TERRY F. MOORER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: terry.moorer@usdoj.gov
ASB-1176-O73T

2

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:04-cr-25-F |
| | ) | |
| AMY PITTS | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2005, I have served a copy of the foregoing, by depositing a copy of same in the United States mail, first class, postage prepaid, and properly addressed to Barry Teague, Esquire.

Respectfully submitted,

*Clark Morris for:*

TERRY F. MOORER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: terry.moorer@usdoj.gov
ASB-1176-O73T

3

IN THE **RECEIVED**RT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
2005 AUG 3 **NORTHERN** DIVISION
5: 46

DEBRA P. HACKETT. CLK
UNITED STATES OF **AMERICA**CT COURT
MIDDLE DISTRICT ALA.

     v.             )        CR. NO. <u>2:04-CR-25-F</u>

                      )

AMY ANN PITTS         )        **UNDER SEAL**

                      )

## <u>NOTICE OF BREACH OF PLEA AGREEMENT</u>

Comes now the United States of America, by and through Leura Garrett Canary,

United States Attorney for the Middle District of Alabama, and submits the above-captioned

motion. In support of this motion, the Government offers the following:

On August 30, 2005, the United States learned that Defendant Amy Pitts submitted

a urine sample which tested positive for methamphetamine. Additionally, the defendant

possessed methamphetamine which was discovered during a search of her purse at the

United States Probation Office. The use and possession of methamphetamine by the

defendant constitutes violations of state and federal law, and therefore relieves the United

States of its obligation of the terms and conditions of the plea agreement. <u>See</u> paragraph

4j at page 8 of Plea Agreement. Under the terms of the plea agreement, the defendant

may not withdraw her guilty plea and is subject to being sentenced as if she had not

entered a plea agreement with the United States. <u>Id</u>.



**GOVERNMENT
EXHIBIT**

CASE
NO. _04-Cr- 25_

EXHIBIT
NO. _F_

Respectfully submitted this the 31st day of August, 2005.

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

TERRY F. MOORER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: terry.moorer@usdoj.gov
ASB-1176-O73T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          CR. NO. 2:04-CR-25-F
                                  )
AMY ANN PITTS                     )

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2005, I hereby certify that I have served a copy

of the foregoing, by depositing a copy of same in the United States mail, first class,

postage prepaid, and properly addressed to Barry Teague, Esquire.

Respectfully submitted,

TERRY F. MOORER
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: terry.moorer@usdoj.gov
ASB-1176-O73T

−3−

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**RECEIVED**

2005 SEP 28  P 2: 42

UNITED STATES OF AMERICA     *
                                                     *
      VS.                                         *      CR No. 2:04-CR-25-F
U.S. DISTRICT COURT         *
AMY ANN PITTS                         *

### DEFENDANT, AMY PITTS, RESPONSE TO NOTICE OF BREACH
### OF PLEA AGREEMENT FILED BY THE UNITED STATES

COMES NOW, the defendant, by and through the undersigned counsel, and in response to the Notice of Breach of Plea Agreement filed by the United States Attorney in this case shows this Honorable Court the following:

1.      That the defendant has been rendering assistance to the Agents involved in this case against targets that has resulted in the filing of cases pending in this and other courts.

2.      That her assistance to the government was dangerous to her safety, and indeed, Pitts was publicly exposed as an informant by one Nicole Broadfoot through Ms. Broadfoot's hacking into the Court's computer and publishing Amy Pitts agreement with the government on the street. Broadfoot particularly advised "targets" that Pitts was endeavoring to help government agents prosecute them.

3.      That the United States Attorney filed a Notice of Breach of Plea Agreement on, to-wit: August 31, 2005.

4.      That the government's notice of breach overlooks many meritorious things that the defendant has done for the government that should entitle her to either all of or at least most of the benefits she is entitled to under her agreement with them.



**GOVERNMENT EXHIBIT**

CASE NO. 04-cr-25

EXHIBIT NO. G

5.    Prior to the filing of the Notice of Breach, the United States Attorney filed two

motions on, to-wit:  July 28, 2005, as follows:

       a.     For a USSG, §5K1.1 downward departure for substantial assistance to a prison term of 36 months that would be in accordance with the defendant's plea agreement on file with this court.

       b.     For a downward departure of three levels pursuant to USSG, §3E1.1 pursuant to her timely entry of a guilty plea.

6.    That the filing of these two motions is evidence that Amy Pitts had performed

pursuant to the agreement in such manner that she was entitled to consideration enough to get

her the benefits of the agreement.  In fact, the defendant at the time of the filing of the **plea**

**agreement** according to the prosecutors had already earned the 36 months sentence, and that if

her cooperation continued she would be entitled to an even greater reduction than a sentence of

36 months.  Amy Pitts continued to render valuable assistance to the government at great risk to

her safety.  She should not be deprived of her rights to the benefits of the plea agreement and

the government's motions for downward departure.

6.    Assuming *arguendo* that Amy Pitts should be punished for having her urine screen

show positive, the court is asked to consider that if she had been on supervised release from

prison with such violation, the most she would be punished under the guidelines for a violation

of such supervision would be 24 months.  If the court deems that the defendant should not get

the complete benefit called for under the plea agreement and the government's motions, the

defense submits that no more than an extra 24 months should be added to her sentence.

WHEREFORE, defendant Pitts prays this Honorable Court to grant her a sentence within the terms of her plea agreement with the government for the reasons set forth above.

BARRY E. TEAGUE, [TEAOO3]
ATTORNEY FOR DEFENDANT

ADDRESS OF COUNSEL:

Barry Teague, Esq.
138 Adams Avenue
Post Office Box 586
Montgomery, AL  36101
(334) 834-4500; FAX 834-4501

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon the United States Attorney and any other counsel of record by placing same in the U.S. Mail, postage prepaid and addressed as shown below, on September 28, 2005:

**Honorable Terry Moorer**
**Assistant U.S. Attorney**
**Post Office Box 197**
**Montgomery, AL  36101**

BARRY E. TEAGUE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| AMY ANN PITTS | ) | Docket No. 2:04CR00025-F-001 |
| | ) | |

---

**Prepared for:**     The Honorable Mark E. Fuller
              Chief United States District Judge

**Prepared by:**     Jacquelyn P. Caple
              Senior United States Probation Officer
              Montgomery, Alabama
              (334) 223-7301

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| **Terry F. Moorer** | **Barry E. Teague** |
| One Court Square | Attorney at Law |
| Suite 201 | 138 Adams Avenue |
| Post Office Box 197 | P. O. Box 586 |
| Montgomery, AL 36101-0197 | Montgomery, AL 36101 |
| Telephone: (334) 223-7280 | Telephone: (334) 834-4500 |
| | Fax: (334) 834-4501 |

---

**Sentence Date:**     **October 13, 2005 @ 9:00 a.m.**

**Offense:**      Count 1: Possession with Intent to Distribute Methamphetamine
          21 U.S.C. § 841(a)(1), a Class B felony.  5 - 40 years/$2,000,000 fine.

**Release Status:**     Arrested January 28, 2004.  Released on $25,000 unsecured bond May 4,
          2004. Bond revoked and reinstated January 29, 2005. Bond again revoked
          and defendant placed in custody of USM on August 31, 2005.

**Detainers:**      None.

**Co-Defendants:**     None.

**Related Cases:**     None known.



GOVERNMENT EXHIBIT

CASE NO. 04-cr-25

EXHIBIT NO. H

---

**Date Report Prepared:** July 1, 2005          **Date Report Revised:** September 22, 2005

**U.S.A. v. Amy Ann Pitts**
**Docket No. 2:04CR00025-F**

Presentence Investigation Report

<u>Identifying Data</u>:

| | |
|---|---|
| Date of Birth: | February 2, 1979 |
| Age: | 26 |
| Race: | White |
| Sex: | Female |
| Ethnic Origin: | Non-Hispanic |



| | |
|---|---|
| S.S.#: | 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 |
| FBI #: | 778521DC0 |
| USM #: | 11373-002 |
| SID #: | AL01570297 |
| DL#: | AL6650898 (Expiration Date 05/13/08) |

| | |
|---|---|
| Education: | GED |
| Dependents: | None |
| Citizenship: | U.S.A. |

| | |
|---|---|
| Legal Address: | 281 Easy Street<br>Wetumpka, AL  35092 |

| | |
|---|---|
| True Name: | Amy Ann Pitts Wadsworth |

**Restrictions on Use and Redisclosure of Presentence Investigation Report.** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (*i.e.,* classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

U.S.A. v. Amy Ann Pitts                                    Presentence Investigation Report
Docket No. 2:04CR00025-F

## PART A.  THE OFFENSE

### Charge(s) and Conviction(s)

1.    On February 25, 2004, a one count indictment and forfeiture allegation charging the
      defendant, Amy Ann Pitts, with violation of the Controlled Substances Act was filed in the
      United States District Court for the Middle District of Alabama.

2.    Count 1 of the indictment charged that on or about January 28, 2004, in Montgomery
      County, within the Middle District of Alabama, the defendant did knowingly and
      intentionally possess with intent to distribute 50 grams or more of methamphetamine, a
      Schedule II Controlled Substance, in violation of Title 21, United States Code, Section
      841(a)(1).

3.    The forfeiture allegation names all property which is to be forfeited upon conviction of Count
      I in accordance with 21 U.S.C. § 853, including property constituting or derived from any
      proceeds the defendant obtained directly or indirectly as a result of the violation of Title 21
      U.S.C. § 841(a)(1), all property used or intended to be used in any manner or part to commit
      and to facilitate the commission of the violation of Title 21 U.S.C. § 841(a)(1), and substitute
      assets if, as an act or omission of the defendant, the forfeitable property cannot be located
      upon the exercise of due diligence, or has been transferred or sold to or deposited with a third
      person, or has been placed beyond the jurisdiction of the court, or has been substantially
      diminished in value, or has been commingled with other property which cannot be
      subdivided without difficulty.

4.    On January 28, 2004, the defendant was arrested by the United States Drug Enforcement
      Administration and transferred to the custody of the United States Marshals Service in the
      Middle District of Alabama.  On January 29, 2004, she was released on $25,000 unsecured
      bond with special conditions to include reporting to the Pretrial Services Office as directed,
      active employment, random drug urinalysis testing, drug treatment and counseling if
      determined necessary, home detention, restriction from excessive use of alcohol or any use
      of narcotic drugs and other controlled substances unless prescribed by a licensed medical
      practitioner and restriction from possession of drug paraphernalia, possession of a firearm,
      destructive device or other dangerous weapon.  On April 12, 2004, a petition for a warrant
      for the defendant's arrest and revocation of bond was requested based on the defendant's
      continued usage of methamphetamine while on bond.  The defendant was arrested; however,
      was continued on bond on May 4, 2004, with a modified condition that she be placed in the
      custody and under supervision of her father.  On August 31, 2005, the defendant was again
      arrested for violation of her bond conditions, continued usage of methamphetamine, and she
      was remanded to the custody of the United States Marshal.

5.    On April 11, 2005, the defendant pled guilty to Count 1 of the indictment in accordance with
      a written plea agreement filed pursuant to Rule 11(c)(1)(C) of the *Federal Rules of Criminal
      Procedure*, as amended, in which the government agreed to recommend a sentence of 36
      months imprisonment and agreed to file a motion for downward departure under the
      provisions of Rule 35, of the Federal Rules of Criminal Procedure, if the defendant provides

substantial assistance to the United States in other cases. The defendant agreed to provide Substantial Assistance as requested and to waive appeal and collateral attack. On August 30, 2005, the defendant violated the terms of her plea agreement, specifically Paragraph 4(j), and the government filed a motion to be released from the terms of the plea agreement. In accordance with this provision of the plea agreement, **the determination of whether the defendant has breached the plea agreement by failing to fulfill her obligations is at the sole discretion of the government and the defendant does not have the right to withdraw her guilty plea.**

### The Offense Conduct

6. Based on information received from confidential and reliable sources, Alabama State Trooper - ABI Agent Joseph B. Herman requested a federal search warrant for the property located at 2500 Lenox Court, Montgomery, Alabama, the residence of Amy Ann Pitts and Tommy Wadsworth. On January 28, 2004, Chief United States Magistrate Judge Charles S. Coody granted the search warrant which was executed by HIDTA (High Intensity Drug Trafficking Area) task force agents that same date.

7. Agents found approximately four ounces of a mixture containing methamphetamine, which was described as "ice" quality methamphetamine, and a bag containing drug paraphernalia (small plastic baggies, a measuring spoon, and a pipe) in a plastic tool box that was affixed to a piece of wood flooring in a metal storage shed in the back yard of the residence. Marijuana was located in a weight stand and a smoke detector in a back bedroom which was being used as a weight room and in the console of the defendant's vehicle. A Beretta 9mm semi-automatic handgun with two magazines and holster was found under the mattress of the bed in the master bedroom. A Raven .25 caliber semi-automatic pistol with one magazine, in a holster, was found in a small dresser in the master bedroom and a Rossi-Interarms .38 caliber revolver, loaded with five rounds of ammunition, in a holster was found in a chest of drawers in the master bedroom. Two Butane torches and a spiral bound journal were taken from the master bedroom and a surveillance camera system which had at least one camera pointed toward the storage shed was found in the weight room. Officers also seized four cellular telephones from the defendant's den.

8. As a result of the search, Pitts and Tommy Wadsworth were arrested and transported to the Montgomery City Jail. The seized narcotics were forwarded to the DEA Forensics Laboratory and resulted as 146.7 grams (gross) or **115.1 grams (net) d-Methamphetamine HCl Dimethyl Sulfone at 16% purity** and a total of 93.9 grams (gross) or **5.9 grams (net) of marijuana.**

9. On August 2, 2004, the defendant entered into a proffer agreement with the United States. On August 4, 2004, the defendant and her counsel met with the government and assigned agents and, under proffer agreement, provided information regarding the activities of others involved in the distribution of "ice" methamphetamine. Such information included reference to her own offense conduct which was not previously used against the defendant in accordance with USSG §1B1.8(a). However, upon the defendant's breach of the cooperation agreement, the government has invoked the provision of USSG §1B1.8(b)(4).

4

10.     During her initial debriefing, the defendant advised agents that she began using methamphetamine in 2001 while employed at Itz Robertz Salon and Day Spa. She identified her source (S1) and stated that S1 received the supply from Atlanta. She stated that in the initial phases of her distribution, she would collect enough money from several different people to purchase ounce quantities at $1,500 per ounce and travel to Atlanta with S1 to purchase "ice". In early 2002, she stated that she began "fronting" S1 $1,500 for "ice". Of the ounce, she stated she would keep and "eight ball" (approx. 3.5 grams) for herself and sell the rest to an associate at $250 per "eight ball" for distribution. She stated that she continued to purchase *one to two ounces for six months*, eventually increasing her purchases to *three to four ounces* at a time.

11.     In June or July 2003, the defendant developed another source (S2). She and S1 jointly purchased *eight ounces of "ice" per week* from S2. When the defendant became comfortable with S2, she began purchasing "ice" directly from S2. According to the defendant, she eventually increased her purchases to *one to two pound quantities*. She stated that a pound of "ice" cost $14,000; therefore, she did not always buy pound quantities and sometimes purchased odd quantities from S2, like *eight, nine or ten ounces*, at a time. The defendant stated that she would always keep half of her purchases and give the remainder to S1. She stated that she sold her "ice" in "eight ball" quantities only, but would sell to S1 when S1 ran out of his supply.

12.     Based on the statements made by the defendant and given the most conservative estimates and time frames, the defendant implicated herself in the joint distribution of more than 6 kilograms of "ice". The defendant stated that the methamphetamine (115.1 grams d-methamphetamine hydrochloride) that was seized from her household on the day of her arrest January 28, 2004, was delivered by a different individual, S3, on January 27, 2004.

**Victim Impact Statement**

13.     There is no identifiable victim who incurred a physical or financial loss as a result of this offense.

**Adjustment for Obstruction of Justice**

14.     Pursuant to USSG §3C1.1 and *U.S. v. Witherell,* 186 F.3d 1343, (11th Cir. 1999), a two point enhancement for obstruction of justice is applicable if the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct or a closely related offense. The defendant was involved in an ongoing cooperative agreement with the government. She was initially released on bond and her sentencing was continued in order to continue with her cooperative agreement. Upon her initial violation of her bond conditions for use of methamphetamine, the defendant was continued on release status and allowed to participate in the electronic monitoring program conditioned upon her residence at her father's house in Wetumpka. On August 30, 2005, the defendant reported to the United States Probation Office to submit a random urine screen. During the testing,

5

Senior USPO Wood asked the defendant to lift her shirt. While the defendant initially refused to do so, she later lifted her shirt and SrUSPO located an apparatus taped to the defendant's stomach. This item was seized by SrUSPO Wood and found to contain "fake urine". The defendant admitted smoking methamphetamine on or about August 28, 2005, and a true urine specimen was collected. This specimen resulted positive for the presence of methamphetamine/amphetamine and the defendant signed an Admission of Drug Use Form. After her admission, SrUSPOs Ross and Wood obtained a consent to a search of the defendant's vehicle from which the defendant's purse was retrieved. Search of the defendant's vehicle resulted negative for any contraband or drugs; however, the defendant was asked if her purse contained any contraband at which time she pulled her eyeglass case from her purse and revealed a plastic baggie containing a white rock-like substance later determined to be methamphetamine and a glass pipe used for smoking methamphetamine. The defendant advised the substance was, in fact, methamphetamine and the substance was seized. Task Force Agent Joe Herman stated the substance, which appeared to be slightly less than an "eight ball" of methamphetamine, was forwarded to the Forensic Science Laboratory in Texas for analysis.

15.    The defendant has obstructed justice by impeding the administration of justice in sentencing of her own case as well as in future cases contemplated by the government as a part of Cooperative Agreement as outline in Pages 2 through 4 of the plea agreement. She has also obstructed justice as outlined by the *Witherell* case as she has diverted judicial and law enforcement officers from their other duties.

**Adjustment for Acceptance of Responsibility**

16.    The defendant pled guilty to the instant offense in a timely manner; however, she violated the conditions of her release on two separate occasions by continuing to use methamphetamine. In accordance with USSG §3E1.1 (n.3), entry of a plea of guilty prior to the commencement of trial and truthfully admitting the conduct comprising the offense of conviction, along with relevant conduct, generally constitutes significant evidence of acceptance of responsibility. However, this conduct may be outweighed by other conduct which is inconsistent with acceptance of responsibility. The defendant's continued use of drugs, in spite of the court's efforts to assist her in maintaining her freedom, and her use of a hand made apparatus to attempt to fake a clear urine screen has jeopardized the defendant's clear status with the government's cooperation agreement and is indicative of a lack of genuine acceptance and remorse.

**Offense Level Computation**

17.    The 2004 edition of the Guidelines Manual has been used in this case.

18.    **Base Offense Level:**    The Base Offense Level for offenses in violation of 21 U.S.C. § 841(a)(1) is found at USSG §2D1.1, which provides that the offense level specified in the Drug Quantity Table set forth in subsection (c) is to be applied. Pursuant to USSG §2D1.1(c)(1), offenses involving more than 1.5 kilograms of "ice" are assigned a base offense level of 38.                              **38**

19. **Specific Offense Characteristics:** Pursuant to USSG §2D1.1(b)((1), the offense level is increased by two levels if a firearm was possessed.                                                                   2

20. **Victim-Related Adjustments:** None                                                                   0

21. **Adjustment for Role in the Offense:** None                                                           0

22. **Adjustment for Obstruction of Justice:** Pursuant to USSG §3C1.1, if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct, or a closely related offense, the offense level is increased by two levels. The defendant's continued use of narcotics and possession of a distribution amount of methamphetamine is closely related to the offense of conviction which is Possession with Intent to Distribute Methamphetamine. Further, her conduct (that is, continued usage of methamphetamine and possession of methamphetamine) is a willful attempt to impede the administration of justice.                                                                   2

23. **Adjusted Offense Level** (Subtotal):                                                                   **42**

24. **Adjustment for Acceptance of Responsibility:** None.                                                   **0**

25. **Chapter Four Enhancements:** None                                                                       0

26. **Total Offense Level:**                                                                                 **42**

## PART B.  THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

27. None known.

### Adult Criminal Convictions

28. None known.

### Criminal History Computation

29. The defendant has no known or confirmed criminal history and a criminal history score of zero points. According to the Sentencing Table (Chapter 5, Part A), zero criminal history points establishes a criminal history category of I.

U.S.A. v. Amy Ann Pitts
Docket No. 2:04CR00025-F

Presentence Investigation Report

## PART C.  OFFENDER CHARACTERISTICS

### Personal and Family Data

30.    Amy Ann Pitts was born February 2, 1979, one of two children to the marital union of
Francisco Javier "F.J." Pitts and Margaret Ann Corbin Pitts in Dothan, Alabama.  The
defendant's parents divorced when the defendant was nine years old prior to reuniting and
moving to Montgomery where the defendant has primarily resided since she was
approximately ten years old.  According to the defendant, her parents married when her
mother was 17 years old and her father was 25 years old.  The difference in their ages resulted
in several separations, the last one occurring when the defendant was approximately 21 years
old.  The defendant's mother is currently 44 years old and resides in Midland City, where she
is employed as an architect assistant.  The defendant's father is 52 years old and resides at 281
Easy Street in Wetumpka.  He is self-employed and owner of Three Brothers Welding located
on Mobile Road in Montgomery.  The defendant has one sister, April Lane Pitts who is 23
years old and resides in Montgomery where she is a cosmetology student at Trenholm-J. P.
Technical School campus.

31.    On May 9, 2004, the defendant married Tommy J. Wadsworth in Montgomery, Alabama.  The
defendants' spouse is employed by the defendant's father at Three Brothers Welding;
however, he also has skills as a tile setter.  The defendant has no children.

32.    Upon the defendant's initial violation of bond conditions, she was ordered to reside with her
father at 281 Easy Street in Wetumpka.  Upon her second violation of the bond conditions,
she was remanded to custody of the United States Marshal.

### Physical Condition

33.    Pitts is 5'4" and weighs approximately 129 pounds.  She described her overall general physical
health as good, but stated that she has dismenorrhea.  She has two tattoos, a dancing free spirit
on her upper back and angel wings on her lower back.

### Mental and Emotional Health

34.    According to the defendant, she has never suffered from any mental or emotional health
problem which would require professional intervention.  There is no documented evidence
to suggest otherwise.

### Substance Abuse

35.    According to the defendant, she began smoking marijuana at the age of 15 years and last
smoked marijuana in 2004.  She stated that she also started drinking alcoholic beverages when
she was 15 years old; however, she did not like drinking.  She experimented with cocaine at
the age of 20, but found that she did not like the effects of cocaine either.  She began using
methamphetamine approximately four years ago and used it moderately gradually increasing
to daily use for eighteen months to two years.  According to the defendant, she used up to a
"bowl" approximately 3.5 grams.  She stated that she lost a considerable amount of weight
and at her most extreme use she weighed about 98 pounds.  The defendant has continued to
use methamphetamine through her date of arrest in August 2005.

### Education and Vocational Skills

36.    The defendant attended 9th grade at Brewbaker Junior High School and attended Canterbury School in Montgomery where she obtained a GED. Records from Brewbaker and Canterbury were requested but never received. Elmore County High School advised the defendant attended 5th and 6th grades there and earned average grades. Her scores began to drop by 7th and 8th grades and she failed several classes. She tested in average to below average in reading and listening skills on standardized tests, but above average in math computations. In October 1998, the defendant received a license in massage therapy. She has had no further education or vocational training.

### Employment Record

37.    From January 2004 to August 30, 2005, the defendant was employed as an administrative assistant earning approximately $190 per week for her father at Three Brothers Welding, located at 4001 Mobile Highway.

38.    From May 1998 to 2002, the defendant reported employment as a licensed massage therapist at Itz Robertz Salon and Day Spa where she reported earnings from $7.00 per hour up to $9.50 per hour upon acquisition of her license. According to Pitts, she was receiving commissions only at the end of her employment and she voluntarily resigned due to physical demands of the job. A request for employment verification was forwarded to the previous owner of this salon (which has been sold over to new management since the defendant's employment); however, there has been no response to date.

39.    According to the defendant, she was employed for approximately eight months in 1998 at Wet Seal Clothing Store at Montgomery Mall. According to personnel, company records are dated back to 1998 and verification of employment in 1998 is not available.

40.    According to the defendant, she was employed for approximately two months at T.J. Maxx Clothing Store when she was 15 years old. Personnel researched records but were unable to locate employment or match records with the defendant's name or social security number.

41.    The defendant reported employment at Parisian for three Christmas seasons during her teen years. An employment response received from Parisian verified her employment in Customer Service as a seasonal helper, but could not confirm exact dates of employment.

42.    The defendant reported employment as a front desk receptionist at Gold's Gym on Cobbs Ford Road in Prattville for a brief period of time when she was 16 years old. Gold's Gym employee, Tina Spivey, confirmed the defendant was previously employed at Gold's Gym, but due to the age of the records they were not immediately available and the exact dates of hire and termination could not be easily retained.

### Financial Condition: Ability to Pay

43.    The defendant submitted a signed personal financial statement and accompanying documentation supporting the following financial profile.

**ASSETS**

| | | |
|---|---|---|
| Cash on Hand | $ | .00 |
| Bank Accounts | $ | .00 |
| Smith Barney IRA (Acct. No. 445-69506-19 884) | $ | .00 |

**UNENCUMBERED ASSETS**

| | | |
|---|---|---|
| 1990 Lexus LS400 | $ | 6,825.00 |
| 1989 Mazda Pickup | $ | 3,000.00 |

**EQUITY IN OTHER ASSETS**

| | | |
|---|---|---|
| 2500 Lennox Court, Montgomery* | $ | 9,825.00 |

**TOTAL ASSETS**          $          9,825.00

**UNSECURED DEBTS**

| | | |
|---|---|---|
| Chase Credit Card | $ | 685.00 |
| Citi Credit Card | $ | 2,600.00 |
| Haverty's | $ | 658.00 |
| Collection Account - AlaGasCo | $ | 83.00 |

**TOTAL UNSECURED DEBTS**          $          4,026.00

**NET WORTH**          $          **5,799.00**

**MONTHLY INCOME**

| | | |
|---|---|---|
| Net Salary | $ | 674.00 |
| Cash Advances | $ | 439.00 |
| Spouse's Net Salary | $ | 1,348.00 |

**TOTAL INCOME**          $          **2,461.00**

**NECESSARY MONTHLY EXPENSES**

| | | |
|---|---|---|
| Groceries | $ | 250.00 |
| Transportation | $ | 222.00 |
| Automobile Insurance | $ | 147.00 |
| Credit Cards | $ | 200.00 |
| Medical | $ | - 41.00 |
| Legal (EM) | $ | 103.00 |
| Storage Fees | $ | 99.00 |

**TOTAL MONTHLY EXPENSES**          $          1,062.00

**NET MONTHLY CASH FLOW**          $          **1,399.00**

*Note A*: This property listed in the subdivision of Bell Meadows in Montgomery, Alabama, with an original principle amount of $121,500, is pending litigation in Civil Case No. 2:04cv-263-F. On June 29, 2004, the government moved to forfeit this property in accordance with 21 U.S.C. § 853 as outlined in the forfeiture allegation contained in the indictment and served a forfeiture complaint on AmSouth Bank. The bank filed a Motion to Set Aside Entry of Default along with a Verified Claim and Answer and noted that the defendant's father, Francisco J. Pitts, is listed as the obligor on the mortgage with AmSouth Bank which reported an outstanding mortgage balance and interest in the property exceeding $118,000 with daily interest of $18.23. The warranty deed also lists this property as the property of the defendant's father with rights of survivorship signed over to the defendant "for and during their joint lives and upon the death of either of them in fee simple" as of July 11, 2003.

44.    The defendant is required to reside with her father who has third party custody as a result of her pretrial supervision conditions; therefore, she is allowed the storage facility fee of $99 per month.   However, other claimed expenses such as maid services at a rate of $80 per month, and cellular phone services at $246 per month are not allowable expenses. It should be noted that the defendant's father has been instrumental in financially supporting the defendant and has granted her a loan in the amount of $11,180.88 which the defendant has used to pay off some higher interest credit card rates on Chase in the amount of $2,600 and Citi in the amount of $8,580.68. The defendant has accumulated additional debt on these same cards as indicated above. According to internal financial investigations guidelines as instructed by the Administrative Office, family loans are not included as necessary living expenses. However, the loan only affects the defendant's debt status and resultant net worth. On February 2, 2004, the defendant had a lien listed against her vehicle, 1990 Lexus, as collateral for this $11,180.88 loan.

45.    An Equifax Credit Bureau inquiry was conducted to determine and confirm the defendant's liabilities as reported. The above liabilities are verified through Equifax credit records. The defendant reported additional debts with Sam's Club Card in the amount of $171 and Parisian in the amount of $286. Equifax confirmed these debts which are noted as "closed by the credit grantor". These debts are not ongoing and not included in the above profile.

46.    Based on the above financial profile, the defendant does not appear to have the ability to pay a fine within the guideline range. She does appear to have the ability to pay a partial fine on a monthly installment basis.

## PART D.  SENTENCING OPTIONS

*In accordance with the recent ruling in United States v. Booker, 125 S. Court, 738 (2005), where the Supreme Court ruled Federal Sentencing Guidelines are now advisory, it is the opinion of the U.S. Probation Office that the Court may sentence a defendant anywhere within the statutory provisions after considering 18 U.S.C. § 3553 when imposing a sentence.*

### Custody

47.    **Statutory Provisions:** The authorized term of imprisonment for this offense, a Class B felony, is 5 to 40 years, pursuant to 21 U.S.C. § 841(b)(1)(B).

11

48. **Guideline Provisions:** Based on a Total Offense Level of 42 and a Criminal History Category of I, the guideline range of imprisonment for this offense is 360 months to Life. Pursuant to USSG §5G1.1(c), the restricted guideline range in this case is 360 to 480 months (Zone D).

## Impact of Plea Agreement

49. In accordance with the plea agreement, the government agreed that the sentence to be imposed in this case should not exceed 36 months. The government did not restrict the amount or type of controlled substances to be assessed against the defendant and all relevant conduct known prior to the defendant's cooperation with the government was included in the computation of the total offense level and resultant guideline range. On August 30, 2005, the defendant breached the terms of her plea agreement by continuing to use controlled substances and attempting to pass a urine screen with "fake urine". Additionally, probation officers located a small quantity of methamphetamine in the defendant's purse which was located in her car. As a result, the government filed a motion to withdraw the plea agreement previously filed in this case and the defendant does not have the right to withdraw.

50. Therefore, there is no plea agreement in this case.

## Supervised Release

51. **Statutory Provisions:** Pursuant to 21 U.S.C. § 841(b)(1)(B), the minimum term of supervised release for this offense is four years. The maximum term of supervised release for this offense is five years, pursuant to 18 U.S.C. § 3583(b)(1).

52. **Guideline Provisions:** Pursuant to USSG §5D1.1(a), the court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute. The authorized term of supervised release for this offense is 4 to 5 years, pursuant to USSG §§5D1.1(a)(1) and (c).

53. In addition to the standard conditions of supervision, the defendant is also subject to special conditions of supervision as provided in USSG §§5D1.3(d) and (e).

## Probation

54. **Statutory Provisions:** The defendant is statutorily ineligible for a sentence of probation because the instant offense is a Class B felony. 18 U.S.C. §§ 3561(a)(1).

55. **Guideline Provisions:** Pursuant to USSG §5C1.1(f), the defendant is not eligible for a sentence of probation because the applicable guideline range is in Zone D of the Sentencing Table.

## Fines

56. **Statutory Provisions:** The maximum fine for this offense is $2,000,000.00, pursuant to 21 U.S.C. § 841(b)(1)(B).

57.    A special assessment of $100.00 is mandatory, pursuant to 18 U.S.C. § 3013.

58.    **Guideline Provisions:** Pursuant to USSG §§5E1.2(c)(3) and (c)(4), the fine range for this offense is $25,000.00 to $2,000,000.

59.    In determining the amount of the fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts, dated April 15, 2005, suggests that a monthly cost of $1,933.80 be used for imprisonment, a monthly cost of $1,675.23 be used for halfway houses, and an annual cost of $3,452.72 be used for supervision.

### Restitution

60.    Pursuant to USSG §5E1.1(d), the court shall order an amount of community restitution. If the court determines that the defendant does not have the ability to pay a fine, no community restitution shall be imposed.

### Denial of Federal Benefits

61.    **Statutory Provisions:** Pursuant to 21 U.S.C. § 862, upon the defendant's first conviction for an offense consisting of the distribution of a controlled substance, a defendant may be declared ineligible for any or all federal benefits for up to 5 years at the court's discretion.

62.    **Guideline Provisions:** Pursuant to USSG §5F1.6, the court may deny eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.

## PART E.  FACTORS THAT MAY WARRANT DEPARTURE

63.    Presentation of information in this section does not necessarily constitute a recommendation by the probation officer.

64.    Pursuant to USSG §5K1.1, the court may depart from the guidelines upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

Respectfully submitted,

Joseph T. Nash
Chief U.S. Probation Officer


by /s/ Jacquelyn P. Caple
    Jacquelyn P. Caple
    Senior United States Probation Officer

APPROVED:


/s/ R. Dwayne Spurlock
R. Dwayne Spurlock
Supervising U. S. Probation Officer

JPC
Date: September 21, 2005

## BARRY E. TEAGUE
## ATTORNEY AT LAW
*138 Adams Avenue*
*Post Office Box 586*
*Montgomery, AL 36101*

Phone: (334) 834-4500                                                    Facsimile: (334) 834-4501

October 3, 2005

**VIA FACSIMILE**
**(Original by U.S. Mail)**
**Ms. Jacquelyn P. Caple**
**U.S. Probation Officer**
**One Court Square Suite 249**
**Post Office Box 39**
**Montgomery, Alabama 36101-0039**

Re:  *U.S.A. vs. Amy Ann Pitts,* 2:04-cr-0025-F



Dear Officer Caple:

Your Revised Presentence Report (PSI) concerning my referenced client, Amy Pitts
Wadsworth, was received by me on September 29, 2005 by envelope postmarked September 28,
2005, with cover letter dated the 28th.  I have very briefly reviewed this report with my client,
and initially we are compelled to state serious objection to all the information contained within
paragraphs 10, 11, and 12 of the revised report.  By telephone voice mail and by fax on
September 30, 2005, I forwarded you a copy of a "proffer" letter containing an agreement
between the government and my client wherein the government at paragraph 6 thereof
specifically stated:

> 6.    Any information given during the proffer will not be used against you <u>in</u>
> <u>calculating</u> any federal sentence you may be facing in the Middle District of
> Alabama, in accordance with Section 1B1.8 of the United States Sentencing
> Guidelines, unless it is determined that you have intentionally provided false or
> misleading information.

The government in paragraph six (6) of the letter clearly promises the defendant that the
government will not use anything she says to enhance her sentence.  Yet this is precisely what
they have endeavored to do in paragraphs 10-12 of the PSI.  The agreements contained in the
"proffer" letter are separate, additional and distinct from those contained in the "plea agreement"
between the government and the defendant dated April 11, 2005, wherein Ms. Pitts entered her
plea of guilty in return for a recommendation from the government of a 36 month prison
sentence.



**GOVERNMENT
EXHIBIT**

CASE
NO. 04-cr-25

EXHIBIT
NO.  I

Ms. Jacquelyn P. Caple
U.S. Probation Officer
Letter, 10-03-05
Page two

Amy Pitts has performed well under the "plea agreement" with regard to her cooperation, and in response to this valuable assistance, the government on or about July 28, 2005, filed two motions (copies attached), the first requesting a §5K1.1, USSG downward departure to a sentence of 36 months, and the second requesting a three level sentence reduction for acceptance of responsibility under §3E1.1, USSG, that referenced Pitts timely plea of guilty. So, there is no issue before the court as to whether Amy Pitts had earned her 36 month sentence. Indeed, your revised PSI dated September 7, 2005, stated:

> On April 11, 2005, the defendant pled guilty to Count 1 of the indictment in accordance with a written plea agreement filed pursuant to Rule 11(c)(1)(C) of the *Federal Rules of Criminal Procedure*, as amended in which the government agreed to recommend a sentence of 36 months imprisonment and agreed to file a motion for downward departure under the provisions of Rule 35, of the Federal Rules of Criminal Procedure, if the defendant provides substantial assistance to the United States in other cases.

At sentencing we expect the evidence to show that my client after the plea wherein she had already earned a 36 month sentence, did in fact continue to provide substantial assistance to the government sufficient to warrant a further downward departure.

It is our position that §1B1.8(b)(4), USSG, does not supersede the provision of the proffer letter that is made under the provisions of Rule 11, Federal Rules of Criminal Procedure.

As you are aware on September 28, 2005, I filed a response for defendant Pitts to the government's filing of a notice of breach of the plea agreement. I would like for this response to note those arguments made in that filed response on said date. The defendant has been rendering assistance to the Agents involved in this case against targets that has resulted in the filing of cases pending in this and other courts. Amy Pitts's assistance to the government was dangerous to her safety, and indeed, Pitts was publicly exposed as an informant by one Nicole Broadfoot through Ms. Broadfoot's hacking into the Court's computer and publishing Amy Pitts agreement with the government on the street and on the internet. Broadfoot particularly advised "targets" that Pitts was endeavoring to help government agents prosecute about the Pitts agreement with the government. The United States Attorney filed a Notice of Breach of Plea Agreement on or about August 31, 2005. The government's notice of breach overlooks many meritorious things that the defendant has done for the government that should entitle her to either all of or at least most of the benefits she is entitled to under her agreement with them. Prior to the filing of the

Ms. Jacquelyn P. Caple
U.S. Probation Officer
Letter, 10-03-05
Page three

Notice of Breach, as already noted above the United States Attorney had filed two motions on, to-wit: July 28, 2005, as follows:

      a.    For a USSG, §5K1.1 downward departure for substantial assistance to a prison term of 36 months that would be in accordance with the defendant's plea agreement on file with this court.

      b.    For a downward departure of three levels pursuant to USSG, §3E1.1 pursuant to her timely entry of a guilty plea.

The very filing of these two motions is evidence that Amy Pitts had performed pursuant to the agreement in such manner that she was entitled to consideration enough to get her the benefits of the agreement. In fact, the defendant at the time of the filing of the plea agreement according to the prosecutors had already earned the 36 months sentence, and that if her cooperation continued she would be entitled to an even greater reduction than a sentence of 36 months. Amy Pitts continued to render valuable assistance to the government at great risk to her safety. She should not be deprived of her rights to the benefits of the plea agreement and the government's motions for downward departure.

Assuming *arguendo* that Amy Pitts should be punished for having her urine screen show positive, the court is asked to consider that if she had been on supervised release from prison with such violation, the most she would be punished under the guidelines for a violation of such supervision would be 24 months. If the court deems that the defendant should not get the complete benefit called for under the plea agreement and the government's motions, the defense submits that no more than an extra 24 months should be added to her sentence beyond the 36 month sentence she had earned.

It is inequitable for the government to now completely ignore the benefits the defendant provided to the government. There is ample room for a middle ground of sentencing in this matter between what is suggested in the PSI and what would be appropriate considering all the considerations under 18 U.S.C. §3553. Cases such as the one at bar easily illustrate yet another reason why the U.S. Supreme Court should have determined that the guidelines are not mandatory.

It is the defense's position that the case of *U.S. v. Witherell, 186 F.3d 1343 (11th Cir. 1999)* would not be applicable in this case, and the facts of that case can be easily distinguished from those in the case at bar. First, Ms. Witherell did not abide by the requirements of the U.S. Magistrate Judge only. Ms. Witherell according to that opinion did nothing else. She had no agreement with the government. In the case at bar, Ms. Pitts has done considerable to help

Ms. Jacquelyn P. Caple
U.S. Probation Officer
Letter, 10-03-05
Page four

the government and the criminal justice system.

We submit that the guidelines calculations set forth in your revised PSI dated September 7, 2005, would be more appropriate to consider in this case than those set forth in the second revised report dated September 22, 2005.

One fact should not be overlooked in this matter, Ms. Pitts suffered from an addiction to methamphetamine. She and her father, Francisco Javier Pitts, both expressed this to the court and to the pretrial services officer. Ms. Pitts had not been exposed to any kind of drug treatment program. Her release involved many hours of cooperation with the government's agents not only within Alabama but also in the State of Georgia. The entire scope of Amy's cooperation when considered against a dirty urine screen should entitled her to most if not all of the benefits called for under her plea agreement.

                                        Yours very truly,

                                        Original Signed By:
                                        BARRY TEAGUE
                                        Barry E. Teague

cc:     Terry Moorer, AUSA